**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>APPROXIMATELY $88,029.00 IN U.S. CURRENCY,<br><br>　　　　Defendant. | No. 1:16-cv-01548-DAD-BAM<br><br>**ORDER VACATING SCHEDULING CONFERENCE SET FOR MARCH 23, 2017**<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION TO STRIKE THE CLAIM AND ANSWER OF JUAN CAMBRON AND MOTION FOR DEFAULT JUDGMENT**<br><br>(Doc. 16) |

In this civil forfeiture action, Plaintiff United States of America ("Government" or "Plaintiff") (1) moves to strike the claim and answer filed by Juan Cambron on November 17, 2016; (2) moves for entry of default judgment against the interests of Juan Cambron, Walter Barraza Arellanes, and Cynthia Bernice Cervantes in approximately $88,029.00 in U.S. Currency; and (3) entry of a final forfeiture judgment to vest in the Government all right, title and interest in the defendant currency. No opposition to the Government's motion was filed, and the Court took the matter under submission pursuant to Local Rule 230(g).

For the reasons set forth below, the Court RECOMMENDS that the Government's motion to strike the claim and answer filed by Juan Cambron and the Government's application for default judgment and for final judgment of forfeiture be GRANTED. Based on this recommendation, the

1

Scheduling Conference currently set for March 23, 2017, at 10:00 a.m. is no longer necessary and is HEREBY VACATED.

**FACTUAL BACKGROUND**

This is a civil action *in rem* to forfeit to the Government approximately $88,029.00 in U.S. Currency ("the Defendant Currency") pursuant to 21 U.S.C. § 881(a)(6).[1] The Defendant Currency was seized on March 7, 2016, at California Interstate 5 and Jayne Avenue, in Fresno County, California.

On March 7, 2016, at about 12:27 p.m., two Fresno County Sheriff Detectives traveled southbound on Interstate 5 in the number one lane when their attention was drawn to a black Infinity G35 (license plate number 7KAP418) in the number two lane.

The Infinity's front driver's side window was tinted dark enough such that detectives could not see the occupant or occupants inside the vehicle. The detectives positioned themselves behind the Infinity and initiated a vehicle stop for violation of California Vehicle Code § 26708(a)(1) - Tinted Windows. The stop occurred on southbound Interstate 5 just north of Jayne Avenue in Fresno County, California.

The driver and sole occupant, identified as Walter Arellanes (hereafter "Arellanes"), was contacted by one of the detectives. The detective observed that the windshield on the Infinity was cracked. In Spanish, Arellanes was advised of the reason for the stop and was asked for his driver's license, vehicle registration, and proof of insurance. As Arellanes gathered his documentation, the detective observed that Arellanes had difficulty handling the documents because of the severity in which both his hands trembled. The detective scanned the interior of the Infinity and observed a single key in the ignition and the strong odor of air freshener that emitted from within the Infinity. When asked if the Infinity belonged to him, Arellanes said yes and that he purchased the vehicle a few days ago from a Cynthia Cervantes. The registration for the Infinity identified Cynthia Cervantes as the registered owner.

---

[1] The factual background is stated as alleged in the Government's verified complaint. Doc. 1.

When asked about his travels, Arellanes stated that he is from Stockton and was en route to Los Angeles to visit his aunt for three to four days, depending on the weather. Bags or extra clothing was not observed in the Infinity. Arellanes handed the detective his documentation, and the detective observed that Arellanes' right hand continued to tremble. Arellanes was advised that he would be issued a written warning for the violation and that he was to remain inside the Infinity. Arellanes understood.

The second detective was advised of what the initiating detective observed. A third detective and a narcotic detection canine were called to respond to the scene. Arellanes was asked to exit the Infinity and accompany the detective to the patrol vehicle. Arellanes agreed and exited the Infinity.

At the patrol vehicle, Arellanes was searched for weapons which met with negative results, however large bulges were felt in both of Arellanes' front jeans pockets. When asked about the bulges, Arellanes said it was money, a few hundred in each pocket. Arellanes had more money in his coat pockets. When asked about the money in his coat pockets, Arellanes said there was $1,000 in each coat pocket. Arellanes was unable to explain why his money was disbursed in different pockets. Arellanes said some of the money belonged to him and some belonged to his aunt. Arellanes said his mother had asked him to deliver some money to his aunt in Los Angeles. When asked if there were any weapons, narcotics, or large sums of currency in the vehicle, Arellanes said no. Arellanes gave his consent to search the Infinity.

Based on training and experience, the items observed in the Infinity lead detectives to believe that Arellanes may be involved in criminal activity: persons involved in smuggling contraband in vehicles will use air fresheners as a masking agent in the event a narcotic canine is introduced to the vehicle and will commonly not have any of their own keys on the key ring to the vehicle. The driver will not have his or her own keys on the key ring to the vehicle because the trip is preplanned, and the vehicle typically does not belong to or is of no important to the driver should it be seized by law enforcement. Arellanes' nervous behavior and lack of luggage is also unusual for a preplanned trip. Any one of these observations is not alone suspicious, but the combination of observations led detectives to believe that Arellanes may be engaged in smuggling contraband.

1 A physical hand search of the Infinity was conducted. Familiar with after-market
2 compartments in Infinity G35s, the search began at the interior rear quarter panel area. The passenger
3 side rear quarter panel was pried back and revealed an after-market compartment. The detective
4 located a red and black bag within the compartment. Arellanes was advised of the red and black bag
5 hidden in the compartment and that he would be detained pending further investigation of the
6 compartment and its contents. Arellanes understood.

7 Arellanes was advised that because of heavy traffic, the Infinity would be moved from the
8 interstate to a safe location to complete the search. Arellanes understood and agreed to move the
9 Infinity. The Infinity was driven to an area near Highway 198 and Interstate 5. Once at this location,
10 the third detective with a narcotic detection canine arrived and assisted on the stop.

11 Narcotic detection canine "Kash" was employed to conduct an exterior and interior sniff for
12 the presence of the odor of narcotics on the Infinity. Kash gave a positive alert to the odor of narcotics
13 at the exterior passenger side door and the tire well located at the rear on the passenger side. Kash also
14 gave a positive alert to the interior rear passenger seat area.

15 A physical hand search of the Infinity continued. The left rear quarter panel was again pried
16 back, to expose the after-market compartment. The two black and red bags which contained several
17 bundles of U.S. currency were removed from the after-market compartment. Each red and black bag
18 contained one plastic zip lock bag which contained several bundles of currency. The right rear quarter
19 panel was then pried back, which also contained and after-market compartment, but the compartment
20 was empty. The two aftermarket compartments were approximately 8 inches in width, 12 inches in
21 length, and approximately 24 inches in depth. The compartments were lined with black after-market
22 carpet and were secured with electronic trunk latches. The rest of the Infinity was searched for
23 additional contraband with negative results.

24 Arellanes was shown what detectives located within the Infinity and was asked if the currency
25 was his. Arellanes said no and that he had no idea the currency was in the vehicle or that the vehicle
26 contained the after-market compartments. Arellanes said he purchased the Infinity on March 3, 2016,
27 from Cynthia Cervantes and did not do a thorough check of the Infinity before or after the purchase.
28

Arellanes was advised that the currency would be seized because of the positive canine alert and the aftermarket compartment where the currency was hidden. Arellanes was asked if he could tell detectives exactly how much money was in his pockets, but Arellanes could not. When Arellanes was asked to explain to whom the money in his pockets belonged, Arellanes refused to answer. Arellanes was advised that the money located in his pockets would also be seized.

A receipt for the seized currency was shown and explained to Arellanes. Arellanes understood and signed the receipt. Arellanes was provided with a Spanish Disclaimer of Currency form which Arellanes reviewed, completed, and signed.

The detectives disabled the after-market compartments the best they could. The Infinity and Arellanes were then released without further incident.

An official count of the currency found on Arellanes' person and within the vehicle was approximately $88,029.00 in U.S. Currency in the following denominations: 4 x $1 bills; 77 x $5 bills; 71 x $10 bills; 2,094 x $20 bills; 201 x $50 bills; and 350 x $100 bills.

**PROCEDURAL BACKGROUND**

On October 13, 2016, the Government filed its complaint for forfeiture *in rem*, alleging that Defendant Currency was subject to forfeiture to the Government under 21 U.S.C. § 881(a)(6) because it constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, and proceeds traceable to such an exchange, and was used or intended to be used to facilitate on or more violations of 21 U.S.C. § 841, *et seq*. On October 17, 2016, based on the allegations of the complaint, the Clerk of the Court issued a Warrant for Arrest of Articles In Rem for the Defendant Currency. (Doc. 3). The warrant was executed on October 21, 2016. (Doc. 6).

According to the Government's Declaration of Publication, a Notice of Forfeiture was published on the official government internet site (www.forfeiture.gov) for thirty days beginning on October 18, 2016. (Doc. 7).

On October 18, 2016, Arellanes aka Walter B. Arellanos was served with notice of this action by first class and certified mail at his last known address of 638 S. Carroll Avenue, Stockton, California 95215. The certified return receipt was signed and dated for October 21, 2016, and returned to the U.S. Attorney's Office. The address listed on the receipt was stricken and "368" was

written above the addressee's information.  (Doc. 8-1, Declaration of Elise Rodriguez ("Rodriguez Decl.") ¶ 5 and Ex. A). Arellanes also was served with notice of this action by first class and certified mail at 368 Carroll Avenue, Stockton, California.   The certified return receipt was signed and dated for October 21, 2016, and returned to the U.S. Attorney's Office.  (Doc. 8-1; Rodriquez Decl. ¶ 6 and Ex. B).

On October 18, 2016, Cynthia Bernice Cervantes was served with notice of this action by first class and certified mail at her last known place of residence 3922 Pamela Lane, Stockton, California 95206.  The Domestic Return Receipt was signed by Nadia Cervantes and returned to the U.S. Attorney's Office.  (Doc. 8-1; Rodriquez Decl. ¶ 7 and Ex. C).

On November 17, 2016, Juan Cambron filed a verified claim to the Defendant Currency and an answer to the complaint.  (Docs. 5, 6).  No other potential claim filed a claim or answer, and the Clerk of the Court entered default as to potential claimants Walter Barraza Arellanes and Cynthia Bernice Cervantes on November 28, 2016.

On January 31, 2017, Claimant Juan Cambron, through his counsel, filed a withdrawal of his claim, indicating that he no longer sought to regain the Defendant Currency.  (Doc. No. 15).

The Government now moves to strike Claimant Juan Cambron's claim and answer, and seeks default judgment against all potential claimants, including Walter Barraza Arellanes, Cynthia Bernice Cervantes and Claimant Juan Cambron ("Claimant").

## DISCUSSION

### I.     Motion to Strike Claim and Answer

The Government requests that the Court strike Claimant's claim and answer.  The Government asserts that a motion to strike is appropriate here because Claimant has withdrawn his claim and has indicated he no longer wishes to pursue this action.

Rule G(8)(c)(i)(A) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, states, in relevant part: "At any time before trial, the government may move to strike a claim or answer: (A) for failing to comply with Rule G(5) . . . ."  In relevant part, Rule (G)(5) requires that an individual contesting the forfeiture of property file a claim in the court where the action is pending.

Although Claimant initially filed a verified claim in compliance with Rule (G)(5), he subsequently withdrew his claim by written notice of withdrawal. Based on that withdrawal, Claimant is no longer in compliance with Rule G(5). Accordingly, the Court recommends that the Government's motion to strike be granted, that Claimant's claim and answer be stricken from the record, and that default be entered as to Claimant.[2]

## II. Motion for Default Judgment

The Government also applies *ex parte* for the entry of default judgment against the interests of the Claimant, Walter Barraza Arellanes and Cynthia Bernice Cervantes. The Government further applies for the entry of a final judgment of forfeiture to vest in the Government all right, title and interest in the Defendant Currency.

### A. Sufficiency of the Complaint

The Government contends that the allegations set forth in the Verified Complaint for Forfeiture In Rem and the facts cited "provide ample grounds" for forfeiture of the Defendant Currency. (Doc. 16 at 4). A complaint's sufficiency is a factor to consider when deciding whether to grant default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Money or other things of value are subject to forfeiture if they are furnished or intended to be furnished in exchange for a controlled substance or listed chemical, are proceeds traceable to such an exchange or are used or intended to be used to facilitate a violation of 21 U.S.C. § 841, *et seq.* 21 U.S.C.§ 881(a)(6).

The Government's verified complaint alleges that the Defendant Currency constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, and proceeds traceable to such an exchange, and was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq.* The complaint meets the requirements of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, in that it is verified; states the grounds for subject matter

---

[2] Accompanying the motion to strike, the Government submitted a request for entry of default as to Juan Cambron, along with a supporting declaration. (Doc. Nos. 16-1, 16-2). The Federal Rules of Civil Procedure also require entry of default prior to entering a default judgment. *See* Fed. R. Civ. P. 55(a), (b); *see also United States v. $19,960.00 in U.S. Currency*, 2013 WL 2456800, at *2 (C.D. Cal. Jun. 6, 2013) (in a civil forfeiture action, court may order default judgment following the entry of party's default by the court clerk).

jurisdiction, in rem jurisdiction, and venue; describes the property seized and the circumstance of its seizure; and identifies the relevant statutes.  In the absence of assertion of interests in the Defendant Currency, this Court is not in a position to question the facts supporting its forfeiture.  As alleged, the facts set forth a sufficient connection between the Defendant Currency and violations related to controlled substances or listed chemicals to support forfeiture.

## II.     Notice Requirements

The Fifth Amendment's Due Process Clause prohibits the Government from deprivation of property without "due process of law."  Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard."  *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S. Ct. 492 (1993).  The Government contends that it provided required notice for the forfeiture of the Defendant Currency.

### A.     Notice by Publication

Supplemental Rule G(4) sets forth the rules for publication of the notice of action in federal forfeiture proceedings.  Rule G(4)(a)(iv)(C) provides that in lieu of newspaper publication, the Government may publish notice by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days."

Here, publication occurred on the official internet government forfeiture site (www.forfeiture.gov) for 30 consecutive days beginning on October 18, 2016.  The Government filed its Declaration of Publication on November 22, 2016.  (Doc. 7).

### B.     Personal Notice

When the Government knows the identity of the property owner, due process requires "the Government to make a greater effort to give him notice than otherwise would be mandated" by publication. *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998).  In such cases, the Government must attempt to provide actual notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action.  *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) (quotations omitted).  "Reasonable notice, however, requires only that the government attempt to provide actual notice; it does not require that the government

demonstrate that it was successful in providing actual notice." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005).

Supplemental Rule G(4)(b)(iii)(A) mirrors this requirement, providing for notice to be "sent by means reasonably calculated to reach the potential claimant." Additionally, this Court's Local Rule 540 addresses notice to persons known to have an interest in property subject to forfeiture. The rule requires that a party seeking default judgment in an action in rem to show to the Court's satisfaction that due notice of the action and arrest of the property has been given by: (1) publication; (2) by personal service on the person having custody of the property; (3) if the property is in the hands of a law enforcement officer, by personal service on the person having custody prior to its possession by a law enforcement agency or officer; and (4) by personal service or certified mail, return receipt requested, to every other person who has not appeared in the action and is known to have an interest in the property; provided that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success. Local Rule 540(a).

In this case, the Government attempted to serve the individual claimants with actual notice by first class mail and certified mail, return receipt requested, as follows:

1. Walter Barraza Arellanes aka Walter B. Arellanos

On October 18, 2016, the Government provided notice of the forfeiture action to Arellanes through first class mail and certified mail at his last known address of 638 S. Carroll Avenue in Stockton, California. The certified return receipt was signed and dated for October 21, 2016, and returned to the U.S. Attorney's Office. The address listed on the receipt was stricken and "368" was written above the addressee's information. The Government also provided notice of the forfeiture action to Arellanes through first class and certified mail at 368 Carroll Avenue, Stockton, California. The certified return receipt was signed and returned to the U.S. Attorney's Office. (Doc. 8-1).

2. Cynthia Bernice Cervantes

On October 18, 2016, the Government provided notice of the forfeiture action to Cynthia Bernice Cervantes through first class and certified mail at her last known place of residence in Stockton, California. The Domestic Return Receipt was signed by Nadia Cervantes and returned to the U.S. Attorney's Office. (Doc. 8-1).

3.  Juan Cambron

On October 18, 2016, the Government provided notice of the forfeiture action to Juan Cambron and his counsel of record by first class and certified mail on October 18, 2016, and Mr. Cambron filed a verified claim and answer on November 17, 2016.  (Doc. 16-2; Declaration of Elisa Rodriguez, ¶¶ 5-6; Docs. 5, 6).

In sum, the Court finds no notice issues arise as to the Defendant Currency's forfeiture.

### C.  Failure to File Claim or Answer

Supplemental Rule G(5) requires any person who asserts an interest in or right against the Defendant Currency to file a claim with the Court within 35 days after service of the Government's complaint or 60 days after the first day of publication on an official internet government forfeiture site.  Supplemental R. G(4)(b) & (5).  Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing as a party to the forfeiture action.  *Real Property*, 135 F.3d at 1317.

There have been no claims filed by or on behalf of Walter Barraza Arellanes aka Walter B. Arellanos or Cynthia Bernice Cervantes with respect to this action.  The Clerk of Court properly entered defaults against Walter Barraza Arellanes aka Walter B. Arellanos or Cynthia Bernice Cervantes.  (Docs. 10, 11).  As discussed above, the Court has recommended that Juan Cambron's claim and answer be stricken from the record, and that default be entered as to Mr. Cambron.

### D.  Default Judgment

The Government seeks judgment against the interests of Walter Barraza Arellanes aka Walter B. Arellanos, Cynthia Bernice Cervantes and Juan Cambron and final forfeiture judgment to vest in the Government all right, title and interest in the Defendant Currency.

Federal Rule of Civil Procedure 55 provides that a court has discretion to enter default judgment against a party after the clerk has entered the party's default.  In considering whether to enter default judgment, the court considers the following factors: (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6)

whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *See Eitel*, 782 F.2d at 1471-72.

Here, the *Eitel* factors favor the granting of the Government's ex parte application for default judgment. First, the Government would be prejudiced by the denial of its motion because the Government would otherwise have to expend additional time and effort litigating an action in which two potential claimants have failed to appear and a third potential claimant has affirmatively withdrawn any claim. Second, the Government's claims appear to have merit. Third, as discussed above, the Government has adhered to the procedural requirements of a forfeiture action, including the filing of a sufficient complaint. Fourth, the sum of money in dispute here is not substantial enough to warrant the denial of the Government's motion. Fifth, there are no genuine disputes as to any material fact. Sixth, it does not appear that the failure of any claimant to answer is due to excusable neglect. And finally, although it is always preferable to decide a case on its merits, it is not practicable here where no claimant has appeared to oppose the Government's motion for entry of default judgment.

## CONCLUSION AND RECOMMENDATION

For the reasons discussed above, it is HEREBY RECOMMENDED as follows:

1. The Government's motion to strike the answer and claim of Juan Cambron be GRANTED;
2. The Clerk of the Court be DIRECTED to enter default against Juan Cambron;
3. The Government's application for default judgment and final judgment of forfeiture be GRANTED;
4. Default judgment be ENTERED against the interests of Walter Barraza Arellanes aka Walter B. Arellanos, Cynthia Bernice Cervantes and Juan Cambron; and
5. Final Judgment of Forfeiture pursuant to 21 U.S.C. § 881(a)(6), forfeiting all right, title, and interest in the Defendant Currency to the United States.

IT IS SO ORDERED.

Dated:   **March 17, 2017**          /s/ *Barbara A. McAuliffe*
                                   UNITED STATES MAGISTRATE JUDGE